IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LAWRENCE FELDMAN, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | NO. 06-2540 |
| | : | |
| v. | : | |
| | : | |
| GOOGLE, INC., | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM**

Giles, J.                                                                March 28, 2007

**I.  Introduction**

Before the court is Defendant Google, Inc.'s Motion to Dismiss Plaintiff's Amended

Complaint, or in the alternative, to Transfer, which motion the court converted to a Motion for

Summary Judgment.  Also before the court is Plaintiff Lawrence E. Feldman's Cross-Motion for

Summary Judgment.  The ultimate issues raised by the motions and determined by the court are

whether a forum selection clause in an internet "clickwrap" agreement is enforceable under the

facts of the case and, if so, whether transfer of this case to the Northern District of California is

warranted.  The court finds in the affirmative as to both issues and, therefore, denies Plaintiff's

Motion for Summary Judgment, grants Defendant's Motion to Transfer, and transfers this case to

the Northern District of California, San Jose Division.  The reasons follow.

Defendant's motion seeks to enforce the forum selection clause in an online "clickwrap"

agreement, which provides for venue in Santa Clara County, California, which is within the San

Jose Division.  In his original complaint, Plaintiff based his claims on a theory of express

contract.  In his Amended Complaint, however, Plaintiff offers a wholly new legal theory.  He

argues that no express contract existed because the agreement was not valid.  Withdrawing his express contract allegations, Plaintiff advanced the theory of implied contract because he argues he did not have notice of and did not assent to the terms of the agreement and therefore there was no "meeting of the minds."  Plaintiff also argues that, even if the agreement were controlling, it is a contract of adhesion and unconscionable, and that the forum selection clause is unenforceable.

The court will address these arguments in turn.  First, the court will examine what law governs this action, Pennsylvania or California law, state or federal law.  Turning to the question of whether the forum selection clause is enforceable, the court will determine whether an express or implied contract exists and whether there was reasonable notice of the contract's terms.  The court next will examine whether the contract and its terms are unconscionable.

If the forum selection clause is enforceable, the court will address whether dismissal or transfer is the appropriate remedy, and, if transfer is appropriate, whether 28 U.S.C. § 1404(a) or 28 U.S.C. § 1406 applies.  If § 1404(a) controls, the court will determine whether the language of the forum selection clause is permissive or mandatory in order to ascertain what weight to give it.  Then, the court will examine the validity or reasonableness of the forum selection clause through application of the test in <u>M/S Bremen v. Zapata Off-Shore Co.</u>, 407 U.S. 1, 12-13 (1972).  Finally, the court will weigh the private and public factors under § 1404(a) to determine whether transfer is warranted.

## II.  Factual Background

**A.**     **General Background**

On or about January 2003, Plaintiff, a lawyer with his own law firm, Lawrence E.

2

Feldman & Associates, purchased advertising from Defendant Google, Inc.'s "AdWords" Program, to attract potential clients who may have been harmed by drugs under scrutiny by the U.S. Food and Drug Administration.

In the AdWords program, whenever an internet user searched on the internet search engine, Google.com, for keywords or "Adwords" purchased by Plaintiff, such as "Vioxx," "Bextra," and "Celebrex," Plaintiff's ad would appear.  If the searcher clicked on Plaintiff's ad, Defendant would charge Plaintiff for each click made on the ad.

This procedure is known as "pay per click" advertising.  The price per keyword is determined by a bidding process, wherein the highest bidder for a keyword would have its ad placed at the top of the list of results from a Google.com search by an internet user.

Plaintiff claims that he was the victim of "click fraud."  Click fraud occurs when entities or persons, such as competitors or pranksters, without any interest in Plaintiff's services, click repeatedly on Plaintiff's ad, the result of which drives up his advertising cost and discourages him from advertising.  Click fraud also may be referred to as "improper clicks" or, to coin a phrase, "trick clicks."  Plaintiff alleges that twenty to thirty percent of all clicks for which he was charged were fraudulent.  He claims that Google required him to pay for all clicks on his ads, including those which were fraudulent.

Plaintiff does not contend that Google actually knew that there were fraudulent clicks, but alleges that click fraud can be tracked and prevented by computer programs, which can count the number of clicks originating from a single source and whether a sale results, and can be tracked by mechanisms on websites.  Plaintiff alleges, therefore, that Google had the capacity to determine which clicks were fraudulent, but did nothing to prevent the click fraud, and did not

3

adequately warn him about click fraud or investigate his complaints about click fraud.  Plaintiff alleges that Google informed him that it did not keep records on an advertiser's account and click history for more than the most recent three months, and that Google disclaimed liability for clicks older than sixty days.

The issue of click fraud with respect to the AdWords program led to a class action suit in Arkansas, which was settled and court approval was given on or about July 26, 2006.  (Pl. Opp. to Mot. to Dismiss, Ex. A.)  Plaintiff alleges that he was a member of that class but timely opted out in order to pursue an individual action.

Plaintiff alleges Google charged him over $100,000 for AdWords from about January 2003 to December 31, 2005.  Plaintiff seeks damages, disgorgement of any profits Defendant obtained as a result of any unlawful conduct, and restitution of money Plaintiff paid for fraudulent clicks.

**B.      The Online Agreement and Forum Selection Clause**

This cross-summary judgment battle turns entirely on a forum selection clause in the AdWords online agreement.  It is undisputed that the forum selection clause provides: "*The Agreement must be* construed as if both parties jointly wrote it, governed by California law except for its conflicts of laws principles and *adjudicated in Santa Clara County, California*." (Def. Mot. to Dismiss, Ex. A, at ¶ 7 (emphasis added).)

Annie Hsu, an AdWords Associate for Google, Inc., testified by affidavit that the following procedures were in place at the time that Plaintiff activated his AdWords account in about January 2003.  (Hsu Decl. ¶ 7).  Although Plaintiff claims that the AdWords Agreement

"was neither signed nor seen and negotiated by Feldman & Associates or anyone at his firm" (Pl. Opp. to Mot. to Dismiss at 2) and that he never "personally signed a contract with Google to litigate disputes in Santa Clara County, California" (Pl. Reply at 1), Plaintiff does not dispute that he followed the process outlined by Hsu.

It is undisputed that advertisers, including Plaintiff, were required to enter into an AdWords contract before placing any ads or incurring any charges.  (Hsu Decl. ¶ 2.)  To open an AdWords account, an advertiser had to have gone through a series of steps in an online sign-up process.  (Hsu Decl. ¶ 3.)  To activate the AdWords account, the advertiser had to have visited his account page, where he was shown the AdWords contract.  (Hsu Decl. ¶ 4.)

Toward the top of the page displaying the AdWords contract, a notice in bold print appeared and stated, "**Carefully read the following terms and conditions.**  If you agree with these terms, indicate your assent below."  (Hsu Decl. ¶ 4.)  The terms and conditions were offered in a window, with a scroll bar that allowed the advertiser to scroll down and read the entire contract.  The contract itself included the pre-amble and seven paragraphs, in twelve-point font.  The contract's pre-amble, the first paragraph, and part of the second paragraph were clearly visible before scrolling down to read the rest of the contract.  The preamble, visible at first impression, stated that consent to the terms listed in the Agreement constituted a binding agreement with Google.  A link to a printer-friendly version of the contract was offered at the top of the contract window for the advertiser who would rather read the contract printed on paper or view it on a full-screen instead of scrolling down the window.  (Hsu Decl. ¶ 5.)

At the bottom of the webpage, viewable without scrolling down, was a box and the words, "**Yes**, I agree to the above terms and conditions."  (Hsu Decl. ¶ 4.)  The advertiser had to

5

have clicked on this box in order to proceed to the next step.  (Hsu Decl. ¶ 6.)   If the advertiser did not click on "**Yes**, I agree . . ." and instead tried to click the "Continue" button at the bottom of the webpage, the advertiser would have been returned to the same page and could not advance to the next step.  If the advertiser did not agree to the AdWords contract, he could not activate his account, place any ads, or incur any charges.  Plaintiff had an account activated.  He placed ads and charges were incurred.

### III.  Procedural History

This matter commenced by writ of summons in the Common Pleas Court of Philadelphia County on March 9, 2006.  Plaintiff filed his original Complaint on June 5, 2006.  The matter was removed to federal district court on June 14, 2006 pursuant to diversity jurisdiction under 28 U.S.C. § 1332.  On July 10, 2006, Defendant filed its first Motion to Dismiss the original complaint.

On August 9, 2006, without leave of court, Plaintiff filed an Amended Complaint, which eliminated the express contract claim and asserted instead claims styled as (1) breach of implied contract, (2) breach of implied covenant of good faith and fair dealing, (3) fraudulent inducement, (4) negligence, (5) unjust enrichment, and (6) violation of California's Business and Professions Code, §17200, et. seq.  Plaintiff reduced his demand for damages from $100,000 to $50,000.  This court has jurisdiction based on diversity under 28 U.S.C. § 1332 because the amount in controversy measured as of the date of removal exceeded the jurisdictional threshold. See Angus v. Shiley, Inc., 989 F.2d 142, 145 (3d Cir. 1993).

The court notes that Plaintiff did not seek leave of court or written consent of the adverse

party in filing its Amended Complaint after a responsive pleading had been served.  See Fed. R.

Civ. P. 15(a).  Defendant, however, did not object to or move to strike the Amended Complaint.

Instead, on August 28, 2006, Defendant filed a Motion to Dismiss the Amended Complaint under

Fed. R. Civ. P. 12(b)(6) or, in the alternative, to transfer the case pursuant to 28 U.S.C. § 1404(a)

to the Northern District of California, whose San Jose Division is located within Santa Clara

County (Def. Mot. to Dismiss at 4 n.3).  The court deems any objections waived and considers

the claims in the Amended Complaint to have amended those in the original complaint.

Furthermore, the court considered the Amended Complaint at oral argument.  (See, e.g., Hrg. Tr.

14-15.)  Consequently, the court deems the Amended Complaint to have legal effect.

When the briefing was complete, the court held oral argument on the motion to dismiss

on November 1, 2006.  At oral argument, the court converted the motion to dismiss into one for

summary judgment under Fed. R. Civ. P. 56 pursuant to Fed. R. Civ. P. 12(b).  Matters outside

the pleadings had to be considered to address the motion adequately.  The court ordered the

parties to submit information regarding the clickwrap agreement and the manner into which it

was entered.  In response, Defendant submitted a Supplemental Memorandum on November 16,

2006, to which Plaintiff responded on December 26, 2006.  On December 6, 2006, Plaintiff filed

a Motion for Summary Judgment.  Defendant filed a response to Plaintiff's summary judgment

motion on January 8, 2007, to which Plaintiff replied on January 26, 2007.

## IV.  Legal Standard for Summary Judgment

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate "if the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

7

any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a summary judgment as a matter of law."  Celetox Corp. v. Catrett, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(c).  In order to defeat a motion for summary judgment, disputes must be both 1) material, meaning concerning facts that will affect the outcome of the issue under substantive law, and 2) genuine, meaning the evidence must be such that a reasonable jury could return a verdict for the nonmoving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex, 477 U.S. at 322-23.  In reviewing a motion for summary judgment, the court "does not make credibility determinations and must view facts and inferences in the light most favorable to the party opposing the motion."  Siegel Transfer, Inc. v. Carrier Express, Inc., 54 F.3d 1125, 1127 (3d Cir. 1995).

---

## IV.  Discussion

**A.**  **Choice of Law**

Defendant argues that the court must apply California law.  The AdWords Agreement contains a choice of law clause, specifying that the Agreement must be governed by California law.  (Def. Mot. to Dismiss, Ex. A, at ¶ 7.)  Defendant and Plaintiff both rely upon Pennsylvania and California substantive law in their briefs and arguments.

In a diversity case, a federal court must apply the conflict of laws principles of the state in which it sits.  Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 496-97 (1941).  Under Pennsylvania law, conflict of laws principles generally are not offended by the application of a

contractual choice of law provision in a valid contract.  Boase v. Lee Rubber & Tire Corp., 437

F.2d 527, 529 (3d Cir. 1970); cf. Restatement (Second) of Conflict of Laws § 187 (1989).  As

discussed in detail below, the court finds that the AdWords Agreement is enforceable.  California

law therefore would govern this dispute.  Cf. DeJohn v. .TV Corp. Int'l, 245 F. Supp. 2d 913,

918 (N.D. Ill. 2003) (applying New York substantive law to claims involving an online

agreement and its forum selection clause because the agreement at issue was valid and required

New York law in its choice of law clause).

       Most circuit courts, however, have found that federal, and not state law, applies in the

determination of the effect given to a forum selection clause in diversity cases.  See, e.g.,

Rainforest Café v. EklecCo, L.L.C., 340 F.3d 544, 546 (8th Cir. 2003); Jones v. Weibrecht, 901

F.2d 17, 19 (2d Cir. 1990); Manetti-Farrow, Inc. v. Gucci Am., Inc., 858 F.2d 509, 512-13 (9th

Cir. 1988); Stewart Org., Inc. v. Ricoh Corp., 810 F.2d 1066, 1067-69 (11th Cir. 1987) (en banc),

aff'd on other grounds, 487 U.S. 22 (1988); see also Stewart Org., Inc. v. Ricoh Corp., 487 U.S.

22, 31-32 (1988) (holding that in diversity cases, federal law governs determination of what

effect to give forum selection clause in contract).  The Third Circuit has held that federal law

controls because "questions of venue and the enforcement of forum selection clauses are

essentially procedural, rather than substantive, in nature."  Jumara v. State Farm Ins. Co., 55 F.3d

873, 877 (3d Cir. 1995) (quoting Weibrecht, 901 F.2d at 19); see Wall Street Aubrey Golf, LLC

v. Aubrey, 189 Fed. Appx. 82, 84 (3d Cir. 2006) (following Jumara to apply federal law);

AmericanAnglican Envtl. Techs., L.P. v. Doherty, 461 F. Supp. 2d 359 (E.D. Pa. 2006) (same).

Thus, this court follows the Third Circuit precedent set out in Jumara and applies federal law in

determining the validity of the forum selection clause at issue here.

**B.**    **The Online AdWords Agreement is a Valid Express Contract**.

**1.**    **The Clickwrap Agreement is Enforceable.**

Plaintiff contends that the online AdWords Agreement was not a valid, express contract, and that the law of implied contract applies.  In support of this contention, Plaintiff argues that he did not have notice of and did not assent to the terms of the Agreement.  Implying that the contract lacked definite essential terms, but failing to brief the issue, Plaintiff argues that the contract did not include fixed price terms for services.  He further argues that the AdWords Agreement presented does not set out a date when Plaintiff may have entered into the contract.  As to the latter argument, the unrebutted Hsu Declaration states that the AdWords Agreement and online process presented went into effect at the time that Plaintiff activated his AdWords account.  (Hsu Decl. ¶ 7.)  Plaintiff has not presented any evidence to the contrary, nor does he allege that any agreement he made was different from the one presented through the Hsu Declaration.  Thus, there is undisputed evidence that the AdWords Agreement presented is the same that Plaintiff activated with Defendant.

"Contracts are 'express' when the parties state their terms and 'implied' when the parties do not state their terms.  The distinction is based not on the contracts' legal effect but on the way the parties manifest their mutual assent." Baer v. Chase, 392 F.3d 609, 616 (3d Cir. 2006) (citing In re Penn. Cent. Transp. Co., 831 F.2d 1221, 1228 (3d Cir. 1987)).  "There cannot be an implied-in-fact contract if there is an express contract that covers the same subject matter." Id. at 616-17; see DeJohn, 245 F. Supp. 2d at 918 (finding that implied contract claims were precluded where an enforceable express contract, an online agreement, governed the parties' relationship); see also Crescent Int'l, Inc. v. Avatar Cmties., 857 F.2d 943, 944 (3d Cir. 1988) ("[P]leading

alternate non-contractual theories is not alone enough to avoid a forum selection clause if the claims asserted arise out of the contractual relation and implicate the contract's terms.").

The type of contract at issue here is commonly referred to as a "clickwrap" agreement.  A clickwrap agreement appears on an internet webpage and requires that a user consent to any terms or conditions by clicking on a dialog box on the screen in order to proceed with the internet transaction.[1]  Specht v. Netscape Comms. Corp., 306 F.3d 17, 22 (2d Cir. 2002); Kevin W. Grierson, Enforceability of "Clickwrap" or "Shrinkwrap" Agreements Common in Computer Software, Hardware, and Internet Transactions, 106 A.L.R. 5th 309, §1.a n.3 (2004); 4-GL Computer Contracts C (2006).  Even though they are electronic, clickwrap agreements are considered to be writings because they are printable and storable.  See, e.g., In Re RealNetworks, Inc., Privacy Litigation, No. 00-c-1366, 2000 U.S. Dist. LEXIS 6584, at *8-11, 2000 WL 631341, at *3-4 (N.D. Ill. May 11, 2000).

To determine whether a clickwrap agreement is enforceable, courts presented with the issue apply traditional principles of contract law and focus on whether the plaintiffs had reasonable notice of and manifested assent to the clickwrap agreement.  See, e.g., Specht, 306 F.3d at 28-30; Forrest v. Verizon Communications, Inc., 805 A.2d 1007, 1010 (D.C. Cir. 2002); Barnett v. Network Solutions, Inc., 38 S.W.3d 200 (Tex. App. 2001); Caspi v. Microsoft Network, L.L.C., 323 N.J. Super. 118, 125-26 (App. Div. 1999); John M. Norwood, A Summary of Statutory and Case Law Associated With Contracting in the Electronic Universe, 4 DePaul

_____

[1] A clickwrap agreement is distinguishable from a "browsewrap" agreement, which "allow[s] the user to view the terms of the agreement, but do[es] not require the user to take any affirmative action before the Web site performs its end of the contract," such as simply providing a link to view the terms and conditions.  James J. Tracy, Case Note, Legal Update: Browsewrap Agreements: Register.com, Inc. v. Verio, Inc., 11 B.U. J. Sci. & Tech. L 164, 164-65 (2005).

Bus. & Comm. L.J. 415, 439-49 (2006) (discussing clickwrap cases); 1-2 Computer Contracts §

2.07 (2006) (analyzing clickwrap cases).  Absent a showing of fraud, failure to read an

enforceable clickwrap agreement, as with any binding contract, will not excuse compliance with

its terms.  See, e.g., Specht, 306 F.3d at 30; Lazovick v. Sun Life Ins. Co. of Am., 586 F. Supp.

918, 922 (E.D. Pa. 1984); Barnett, 38 S.W.3d at 204.


        **a.**       **There was Reasonable Notice of and Mutual Assent to the AdWords**
               **Agreement.**

Plaintiff claims he did not have notice or knowledge of the forum selection clause, and

therefore that there was no "meeting of the minds" required for contract formation.  In support of

this argument, Plaintiff cites Specht v. Netscape Comms. Corp., in which the Second Circuit held

that internet users did not have reasonable notice of the terms in an online agreement and

therefore did not assent to the agreement under the facts of that case.  306 F.3d at 20, 31.

The facts in Specht, however, are easily distinguishable from this case.  There, the

internet users were urged to click on a button to download free software.  Id. at 23, 32.  There

was no visible indication that clicking on the button meant that the user agreed to the terms and

conditions of a proposed contract that contained an arbitration clause.  Id.  The only reference to

terms was located in text visible if the users scrolled down to the next screen, which was

"submerged."  Id. at 23, 31-32.  Even if a user did scroll down, the terms were not immediately

displayed.  Id. at 23.  Users would have had to click onto a hyperlink, which would take the user

to a separate webpage entitled "License & Support Agreements."  Id. at 23-24.  Only on that

webpage was a user informed that the user must agree to the license terms before downloading a

product.  Id. at 24.  The user would have to choose from a list of license agreements and again click on yet another hyperlink in order to see the terms and conditions for the downloading of that particular software.  Id.

The Second Circuit concluded on those facts that there was not sufficient or reasonably conspicuous notice of the terms and that the plaintiffs could not have manifested assent to the terms under these conditions.  Id. at 32, 35.  The Second Circuit was careful to differentiate the method just described from clickwrap agreements which do provide sufficient notice.  Id. at 22 n.4, 32-33.  Notably, the issue of notice and assent was not at issue with respect to a second agreement addressed in Specht.  Id. at 21-22, 36.  In that clickwrap agreement, when users proceeded to initiate installation of a program, "they were automatically shown a scrollable text of that program's license agreement and were not permitted to complete the installation until they had clicked on a 'Yes' button to indicate that they had accepted all the license terms.  If a user attempted to install [the program] without clicking 'Yes,' the installation would be aborted."  Id. at 21-22.

Through a similar process, the AdWords Agreement gave reasonable notice of its terms. In order to activate an AdWords account, the user had to visit a webpage which displayed the Agreement in a scrollable text box.  Unlike the impermissible agreement in Specht, the user did not have to scroll down to a submerged screen or click on a series of hyperlinks to view the Agreement.  Instead, text of the AdWords Agreement was immediately visible to the user, as was a prominent admonition in boldface to read the terms and conditions carefully, and with instruction to indicate assent if the user agreed to the terms.

That the user would have to scroll through the text box of the Agreement to read it in its

13

entirety does not defeat notice because there was sufficient notice of the Agreement itself and clicking "Yes" constituted assent to all of the terms.  The preamble, which was immediately visible, also made clear that assent to the terms was binding.  The Agreement was presented in readable 12-point font.  It was only seven paragraphs long – not so long so as to render scrolling down to view all of the terms inconvenient or impossible.  A printer-friendly, full-screen version was made readily available.  The user had ample time to review the document.

Unlike the impermissible agreement in Specht, the user here had to take affirmative action and click the "Yes, I agree to the above terms and conditions" button in order to proceed to the next step.  Clicking "Continue" without clicking the "Yes" button would have returned the user to the same webpage.  If the user did not agree to all of the terms, he could not have activated his account, placed ads, or incurred charges.

The AdWords Agreement here is very similar to clickwrap agreements that courts have found to have provided reasonable notice.  See, e.g., Forrest v. Verizon Communications, Inc., 805 A.2d 1007, 1010-11 (D.C. Cir. 2002) (holding that adequate notice was provided of clickwrap agreement terms where users had to click "Accept" to agree to the terms in order to subscribe,  an admonition in capital letters was presented at the top of the agreement to read the agreement carefully, the thirteen-page agreement appeared in a scroll box with only portions visible at a time, and the forum selection clause was located in the final section and presented in lower case font); In Re RealNetworks, Inc., Privacy Litigation, No. 00-c-1366, 2000 U.S. Dist. LEXIS 6584, at *2, 15-17, 2000 WL 631341, at *1, 5-6 (N.D. Ill. May 11, 2000) (finding reasonable notice of clickwrap agreement terms existed where the user had to agree to the terms in order to install software, the agreement came in a small pop-up window, in the same font-size

14

as words in the computer's own display, and with the arbitration clause located at the end of the agreement); Caspi v. Microsoft Network, L.L.C., 323 N.J. Super. 118, 122, 125-27 (App. Div. 1999) (finding that reasonable notice of the terms of a clickwrap agreement was provided where the user had to click "I agree" before proceeding with registration, the agreement was presented in a scrollable window, and the forum selection clause was presented in lower case letters in the last paragraph of the agreement); cf. Pollstar v. Gigmania Ltd., 170 F. Supp. 2d 974, 981 (E.D. Cal. 2000) (finding that reasonable notice of the terms of a browsewrap agreement was not provided when a hyperlink to the terms appeared in small gray print on a gray background).

A reasonably prudent internet user would have known of the existence of terms in the AdWords Agreement.  Plaintiff had to have had reasonable notice of the terms.  By clicking on "Yes, I agree to the above terms and conditions" button, Plaintiff indicated assent to the terms. Therefore, the requirements of an express contract for reasonable notice of terms and mutual assent are satisfied.  Plaintiff's failure to read the Agreement, if that were the case, does not excuse him from being bound by his express agreement.

> **b.**     **The AdWords Agreement is Enforceable Despite Its Lack of a**
> **Definite Price Term.**

Plaintiff's argument that the AdWords Agreement is unenforceable because of failure to supply a definite, essential term as to price is without merit.  Under California and Pennsylvania law, the price term is an essential term of a contract and must be supplied with sufficient definiteness for a contract to be enforceable.  See, e.g., Levin v. Knight, 780 F.2d 786, 786 (9th Cir. 1986); Lackner v. Glosser, 2006 Pa. Super. 14, 22-24 (Super. Ct. 2006).  If the parties,

15

however, have agreed upon a practicable method of determining the price in the contract with

reasonable certainty, such as through a market standard, the contract is enforceable.  See, e.g.,

Portnoy v. Brown, 430 Pa. 401 (1968); 1 Witkin Sum. Cal. Law Contracts § 142 (2006) ("[T]he

complete absence of any mention of the price is not necessarily fatal: The contract may be

interpreted to mean the market price or a reasonable price.").

The AdWords Agreement does not include a specific price term, but describes with

sufficient definiteness a practicable process by which price is determined.[2]  (Def. Mot. to

Dismiss, Ex. A, at ¶ 5.)  The premise of the AdWords program is that advertisers must bid for

keywords or Adwords, and the highest bidder is placed at the top of the advertising hierarchy.

Prices are determined by the market, with the keywords higher in demand garnering higher

prices.  Plaintiff had to have been aware of and understood the pricing process.  Each time that he

purchased keywords, he engaged in this process.  At oral argument, Plaintiff explained the

process by which price was determined and conceded that the process was outlined in the

Agreement.[3]  (Hrg. Tr. at 17-18.)  The court concludes that the Adwords Agreement is

_____

[2] Paragraph 5 of the Agreement states in part: "**Payment.**  You shall be charged based on
actual clicks or other billing methods you may choose online (e.g. cost per impression).  You
shall pay all charges in the currency selected by you via your online AdWords account, or in such
other currency as is agreed to in writing by the parties.  Charges are exclusive of taxes.  You are
responsible to paying (y) [sic] all taxes and government charges, and (z) reasonable expenses and
attorney fees Google incurs collecting late amounts.  You waive all claims relating to charges
unless claimed within 60 days after the charge (this does not effect your credit card issuer rights).
Charges are solely based on Google's click measurements.  Refunds (if any) are at the discretion
of Google and only in the form of advertising credit for Google Partners."

[3] Counsel for Plaintiff stated: "[T]he popularity of the word drives up the price of the
click, and so when you go to not enter the contract, but go to figure out what word you want to
purchase, you see the going rate, and that can change from hour-to-hour, day-to-day."  (Hrg. Tr.
at 17-18.)  When counsel for Defendant commented that this process is described in the contract,
Plaintiff's counsel said, "Yes, they explain that to you.  It's the internet your honor, it is the
twenty-first century." (Hrg. Tr. at 18.)

enforceable because it contained a practicable method of determining the market price with reasonable certainty.

Because there was an express contract covering the same conduct at issue (pay-per-click advertising under the AdWords program) and because the concepts of express and implied contracts are mutually exclusive and cannot co-exist, Plaintiff's argument of an implied contract is precluded as a matter of law.  In addition, the AdWords Agreement provides that it constitutes the entire agreement between the parties, with the exception of any modifications in writing and executed by both parties.  (Def. Mot. to Dismiss, Ex. A, at ¶ 7.)

### 2. The Clickwrap Agreement is not Unconscionable.

Plaintiff argues that the AdWords Agreement and in particular the forum selection clause are unconscionable.  Unconscionability is a general defense to the enforcement of a contract or its specific terms.  Blake v. Ecker, 93 Cal. App. 4th 728, 741 (Ct. App. 2001), overruled on other grounds by Le Francois v. Goel, 35 Cal. 4th 1094, 1107 (2005); cf. Denlinger, Inc. v. Dendler, 608 A.2d 1061, 1067 (Pa. Super. Ct. 1992).  Unconscionability has procedural and substantive components.  Blake, 93 Cal. App. 4th at 742.  "The procedural component is satisfied by the existence of unequal bargaining positions and hidden terms common in the context of adhesion contracts.  The substantive component is satisfied by overly harsh or one-sided results that 'shock the conscience.'"  Comb v. PayPal, Inc., 218 F. Supp. 2d 1165, 1172 (N.D. Cal. 2002) (citations omitted).  The party challenging the contractual provision has the burden to prove unconscionability.  Crippen v. Cent. Valley RV Outlet, Inc., 124 Cal. App. 4th 1159, 1165 (Ct. App. 2004).

17

### a.     The AdWords Agreement is not Procedurally Unconscionable.

Under California law, a contract or its terms may be procedurally unconscionable if it is

an adhesion contract.  Flores v. Transamerica HomeFirst, Inc., 93 Cal. App. 4th 846, 853 (Ct.

App. 2001); cf. Ostroff v. Alterra Healthcare Corp., 433 F. Supp. 2d 538, 542 (E.D. Pa. 2006)

(defining procedural unconscionability under Pennsylvania law as the "absence of meaningful

choice on the part of one of the parties").  A contract of adhesion is a form or standardized

contract prepared by a party of superior bargaining power, to be signed by the party in the weaker

position, who only has the opportunity to agree to the contract or reject it, without an opportunity

to negotiate or bargain.  Armendariz v. Found. Health Psychcare Serv., 24 Cal. 4th 83, 113

(2000); cf. McNulty v. H&R Block, Inc., 843 A.2d 1267, 1273 (Pa. Super. Ct. 2004).

The opportunity to negotiate by itself does not end the inquiry into procedural

unconscionability.  Courts consider factors such as the buyer's sophistication, the use of high-

pressure tactics or external pressure to induce acceptance, and the availability of alternative

sources of supply.  See, e.g., Comb, 218 F. Supp. 2d at 1172-73; Dean Witter Reynolds, Inc. v.

Superior Court, 211 Cal. App. 3d 758, 767-72 (Ct. App. 1989); DeJohn v. TV. Corp. Int'l, 245 F.

Supp. 2d 913, 919 (N.D. Ill. 2003).

Plaintiff argues the AdWords Agreement was a contract of adhesion because it was not

negotiated at arms length and was offered on a "take it or leave it" basis, without an opportunity

to bargain.  Internet users had to agree to the terms in order to activate an AdWords account and

purchase AdWords.  Defendant counters that Plaintiff is a sophisticated purchaser, an attorney,

who had full notice of the terms, who was capable of understanding them, and who assented to

18

them.  Plaintiff has not alleged high-pressure tactics or external pressure to accept the Agreement.

Defendant also argues that other internet providers offer similar advertising services, including MSN Search, AOL Search, Ask.com, Yahoo!, Excite, Infospace, and HotBot, and thus Plaintiff could have chosen to take his business elsewhere.[4]  Plaintiff counters that the availability of other internet service providers does not undercut the existence of an adhesion contract.  See Comb, 218 F. Supp. 2d at 1173 (citing Armendariz, 24 Cal. 4th at 113, for the proposition that a contract may be adhesive even though alternative sources of employment not conditioned on acceptance of an arbitration clause exist).  Plaintiff also asserts that only Yahoo offers comparable advertising and that Yahoo's sign up system is similar to Google's.

Plaintiff, however, has not offered any evidence in support of his assertion.[5]  As such, he has not met his affirmative burden on his summary judgment motion to make a sufficient showing that other online companies did not offer similar, competing advertising services, which lacked forum selection clauses.  See Crippen, 124 Cal. App. 4th at 1165 (holding that the burden to prove unconscionability rests with the party challenging the contractual provision).  On this factor in the analysis, the agreement stands up as not being procedurally unconscionable.

Plaintiff also argues that the AdWords Agreement is procedurally unconscionable because the Agreement violates Fed. R. Civ. P. 23(e), which requires adequate notice of opt-out rights.  See Amchem Prods. v. Windsor, 521 U.S. 591, 628 (1997).  Plaintiff contends that

---

[4]  Defendant has not presented evidence as to this assertion.

[5]  The court observes that, as one court has noted, "[t]he on-line computer industry is not one without competition, and therefore consumers are left with choices as to which service they select for Internet access, e-mail and other information services."  Caspi v. Microsoft Network, L.L.C., 323 N.J. Super. 118, 122-24 (App. Div. 1999) (citations and quotations omitted).

19

Google violated Rule 23(e) and Plaintiff's due process rights in that the settlement notice in the Arkansas class action did not state that any individual litigation would require bringing suit in Santa Clara, California.  Plaintiff's argument is flawed for several reasons.  First, Plaintiff received adequate notice of the forum selection clause requiring litigation in Santa Clara when he assented to the AdWords Agreement.  Second, only the settlement notice, and not the AdWords Agreement and its terms, could violate Rule 23(e), and violation of Rule 23(e) is not part of the procedural unconscionability inquiry.  Finally, the court-approved Arkansas class action settlement cannot be collaterally attacked even if Plaintiff continued as a member of the class.  See In re Diet Drugs, 431 F.3d 141, 145 (3d Cir. 2005) (holding that under federal law, an absent class member may only collaterally attack notice of a prior settlement if there is a lack of due process, and that, once the issue of notice is decided by a court, it may not be relitigated).  As an opt-out, he has no standing in this action to challenge the adequacy of the class action notice approved by the Arkansas court.

A contract is not necessarily one of adhesion simply because it is a form contract.  Courts have recognized the prevalence and importance of standardized contracts in people's everyday lives.  ProCD, Inc. v. Zeidenberg, 86 F.3d 1447, 1451 (7th Cir. 1996) (quoting Restatement (2d) of Contracts § 211 cmt a (1981)) ("Standardization of agreements serves many of the same functions as standardization of goods and services; both are essential to a system of mass production and distribution.  Scarce and costly time and skill can be devoted to a class of transactions rather than the details of individual transactions."); Neal v. State Farm Ins. Cos., 188 Cal. App. 2d 690, 694 (Ct. App. 1961).  Because Plaintiff was a sophisticated purchaser, was not in any way pressured to agree to the AdWords Agreement, was capable of understanding the

Agreement's terms, consented to them, and could have rejected the Agreement with impunity, this court finds that the AdWords Agreement was not procedurally unconscionable.

### b.      The AdWords Agreement is not Substantively Unconscionable.

Even if the AdWords Agreement were procedurally unconscionable, it is not substantively unconscionable.  Under California law, a contract found to be procedurally unconscionable may still be enforceable if its substantive terms are reasonable.  Craig v. Brown & Root, Inc., 84 Cal. App. 4th 416, 422 (Ct. App. 2000); cf. Ostroff v. Alterra Healthcare Corp., 433 F. Supp. 2d 538, 542 (E.D. Pa. 2006) (finding substantive unconscionability under Pennsylvania law where contract terms unreasonably favor the party with greater bargaining power).  California courts focus on whether there was a lack of mutuality in contract formation and on the practical effects of the challenged provisions.  Comb, 218 F. Supp. 2d at 1173; Armendariz, 99 Cal. 4th at 116-17 (noting that substantive unconscionability is satisfied if the agreement lacks a "modicum on bilaterality"); Ellis v. McKinnon Broad Co., 18 Cal. App. 4th 1796, 1803-04 (Ct. App. 1993).

Plaintiff argues that the forum selection clause and other provisions lacked consideration and assent from the Plaintiff, and therefore the Agreement was lacking a modicum of bilaterality. As the court has found that the AdWords Agreement provided reasonable notice of its terms, had mutual assent, and was in other respects a valid express contract, the court rejects this argument.

Plaintiff next argues that the AdWords Agreement contains several unilateral clauses, including the forum selection clause, which make it substantively unconscionable.  He argues that the forum selection clause unreasonably favors Google because it requires billing disputes to

be adjudicated in California.[6]  Plaintiff characterizes as unreasonable provisions disclaiming all

warranties, limiting liabilities, and requiring that claims relating to charges be brought within

sixty days of the charges.[7]  Plaintiff contends that the effect of these provisions, in combination

with the forum selection clause, is to discourage meritorious litigation regarding billing disputes.

First, the court is not persuaded that the forum selection clause, or any other provision

cited by Plaintiff, is unreasonable or shocks the conscience.  As the United States Supreme Court

has found, a forum selection clause in a standardized, non-negotiable contract may be

permissible for several reasons, reasons which apply here.  See Carnival Cruise Lines, Inc. v.

Shute, 499 U.S. 585, 593-94 (1991).  Just as a cruise line has a special interest in limiting fora

because it could be subject to suit where its passengers come from many locales, Defendant has

the same interest where its internet users are located across the United States and the world.  See

---

[6] Plaintiff's assertion of undue burden due to health-related travel restrictions are
irrelevant to the unconscionability inquiry, which focuses on the unfairness of the terms at the
time of entry into the Agreement.  See Aron v. U-Haul Co. of California, 143 Cal. App. 4th 796,
808 (Ct. App. 2006).  The court addresses this assertion in the context of transfer under 28
U.S.C. § 1404(a) below.

[7] The provisions cited by Plaintiff are:
(1) "GOOGLE DISCLAIMS ALL WARRANTIES, EXPRESS OR IMPLIED, INCLUDING
WITHOUT LIMITATION FOR NONINFRINGEMENT, MERCHANTABILITY AND
FITNESS FOR ANY PURPOSE."  (Def. Mot. to Dismiss, Ex. A, at ¶ 4);
(2) "EXCEPT FOR INDEMNIFICATION AMOUNTS PAYABLE TO THIRD PARTIES
HEREUNDER AND YOUR BREACHES OF SECTION 1, TO THE FULLEST EXTENT
PERMITTED BY LAW: (a) NEITHER PARTY WILL BE LIABLE FOR ANY
CONSEQUENTIAL, SPECIAL, INDIRECT, EXEMPLARY, PUNITIVE, OR OTHER
DAMAGES WHETHER IN CONTRACT, TORT OR ANY OTHER LEGAL THEORY, EVEN
IF ADVISED OF THE POSSIBILITY OF SUCH DAMAGES AND NOTWITHSTANDING
ANY FAILURE OF ESSENTIAL PURPOSE OF ANY LIMITED REMEDY; AND (b) EACH
PARTY'S AGGREGATE LIABILITY TO THE OTHER IS LIMITED TO AMOUNTS PAID
OR PAYABLE TO GOOGLE BY YOU FOR THE AD GIVING RISE TO THE CLAIM."  (Def.
Mot. to Dismiss, Ex. A, at ¶ 4); and
(3) "You waive all claims relating to charges unless claimed within 60 days after the charge (this
does not effect your credit card issuer rights)."  (Def. Mot. to Dismiss, Ex. A, at ¶ 5).

22

id. at 593.  Another benefit of such a forum selection clause is that it dispels confusion over

where suits are to be brought, conserving both litigant and judicial resources.  Id. at 593-94.

Finally, just as for the passengers in Carnival Cruise Lines, the benefits of such a forum selection

clause may be passed to internet users in the form of reduced rates for services, because of

savings enjoyed by internet service providers by limiting the fora for suit.  See id. at 594.

Plaintiff's argument that the terms discourage litigation of billing disputes thus is not persuasive,

especially where Defendant's principal place of business is in California.  See Barnett v. Network

Solutions, Inc., 38 S.W.3d 200, 204 (Tex. App. 2001) (citing Carnival Cruise Lines, 499 U.S. at

594).

     Further, the provision requiring that claims relating to charges be brought within sixty

days of the charges is not unconscionable.  Contractual limitations periods are valid and can be

shorter than limitations periods prescribed by statute so long as the period for bringing claims is

reasonable.  Han v. Mobil Oil Corp., 73 F.3d 872, 877 (9th Cir. 1995); see Harris Methodist Fort

Worth v. Sales Support Servs. Inc. Employee Health Care Plan, 426 F.3d 330, 337 (5th Cir.

2005); Northlake Reg'l Med. Ctr. v. Waffle House Sys. Employee Benefit Plan, 160 F.3d 1301,

1302-03 (11th Cir. 1998); Doe v. Blue Cross & Blue Shield United of Wis., 112 F.3d 869, 874

(7th Cir. 1997).  California courts have upheld contractual limitations periods similar to the one

here.  See, e.g., Levitsky v. Farmers Ins. Group of Cos., No. A096220, 2002 Cal. App. Unpub.

LEXIS 2004, at *13-15, 2002 WL 1278071, at *4 (Cal. Ct. App. June 10, 2002) (finding that a

60-day limitations period in which to file billing claims is not unreasonable); Capehart v. Heady,

206 Cal. App. 2d 386, 388-91 (Ct. App. 1962) (holding that a three-month limitations period in a

lease was not unreasonable).

Cases cited by Plaintiff in support of his position are distinguishable because the AdWords Agreement effects only billing disputes and does not inhibit any judicially-created doctrines or prevent litigants from enforcing constitutionally-protected rights.  See Anthony v. Alexander Int'l, L.P., 341 F.3d 256, 266 (3d Cir. 2003) (finding unreasonable a 30-day limitations period for any claim arising out of an employment agreement); Circuit City Stores, Inc. v. Adams, 279 F.3d 889, 894 (9th Cir. 2002) (concluding that a one-year limitations period to state Fair Employment and Housing Act Claims was unreasonable because it would deprive plaintiffs of the judicially-created continuing violation doctrine in discrimination cases).  In the present case, Plaintiff is an attorney and sophisticated purchaser capable of understanding the limitations provision.  The 60-day limitations period affords sufficient time to identify, investigate, and report billing errors.

Finally, as to the other provisions, including those disclaiming all warranties and limiting liabilities, Plaintiff has not met his burden of persuasion as to unconscionability and does not present case law to support his position.  No basis has been presented for the court to conclude that these commonplace terms are unreasonable.

In addition, even if any of the provisions of the contract were unenforceable, these provisions could be modified or severed under the AdWords Agreement's severability clause.[8] (Def. Mot. to Dismiss, Ex. A, at ¶ 7.)  The court finds that neither the AdWords Agreement nor its terms, including the forum selection clause, are unconscionable, and that the AdWords Agreement and its forum selection clause are enforceable.

---

[8] The clause provides: "Unenforceable provisions will be modified to reflect the parties' intention, and remaining provisions of the Agreement will remain in full effect."  (Def. Mot. to Dismiss, Ex. A, at ¶ 7.)

**C.      Analysis under 28 U.S.C. § 1404(a)**

**1.      Transfer of Venue**

Defendant moves for this court to dismiss Plaintiff's complaint or in the alternative, transfer this case to the federal district court in Santa Clara County, pursuant to 28 U.S.C. § 1404(a).  As discussed above, federal law controls when deciding whether to give effect to a forum selection clause and transfer a case.  Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29, 32 (1988); Jumara v. State Farm Ins. Co., 55 F.3d 873, 877 (3d Cir. 1995).  Although dismissal under Rule 12(b)(6) is a "permissible means of enforcing a forum selection clause that allows suit to be filed in another federal forum," the Third Circuit cautions that "as a general matter, it makes better sense, when venue is proper but the parties have agreed upon a not-unreasonable forum selection clause that points to another federal venue, to transfer rather than dismiss." Salovaara v. Jackson Nat'l Life Ins. Co., 246 F.3d 289, 298-99 (3d Cir. 2001); see Stewart, 487 U.S. at 28-29, 32 (holding that a federal court sitting in diversity jurisdiction should treat a request to enforce a forum selection clause in a contract as a motion to transfer venue under applicable federal law, 28 U.S.C. § 1404(a)); 15 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3803.1 (2d ed. 1986 & Supp. 2006).

Transfer, however, is not available when a forum selection clause specifies a non-federal forum.  Salovaara, 246 F.3d at 298.  Plaintiff contends that the forum selection clause contemplated jurisdiction in state, not federal court.  However, the forum selection clause, which states "[t]he Agreement must be . . . adjudicated in Santa Clara County, California," on its face does not limit jurisdiction to state court.  The forum selection clause provides for proper venue in both federal and state courts, so long as those courts are located in Santa Clara County,

California, because the provision's plain language is construed to cover any court in that county. See Jumara, 55 F.3d at 881 (construing an arbitration provision requiring the action to transpire within a particular county to mean that the action would be permitted in any court, state or federal, in that county).

The federal courthouse for the San Jose Division of the Northern District of California is located in the city of San Jose. San Jose is the county seat of government for Santa Clara County. The federal courthouse therefore is located undisputably in Santa Clara County. Transfer is an available remedy because the forum selection clause includes a federal forum. See id. at 881-83 (applying the § 1404(a) analysis for transfer where a forum selection clause permitted any state or federal forum within a particular county).

If transfer is the appropriate remedy, the court must then consider whether 28 U.S.C. § 1404(a) or § 1406 applies. "Section 1404(a) provides for the transfer of a case where both the original venue and the requested venue are proper. Section 1406, on the other hand, applies where the original venue is improper and provides for either transfer or dismissal of the case." Id. at 878. Whether venue is proper in this district is governed by the federal venue statute, 28 U.S.C. § 1391. Id.

Without considering the forum selection clause, venue is proper in the Eastern District of Pennsylvania. Neither party disputes that Defendant is subject to personal jurisdiction in this district because Defendant transacts business here. See 28 U.S.C. § 1391(c); Jumara, 55 F.3d at 878-79; Stewart, 487 U.S. at 29 n.8 ("The parties do not dispute that the District Court properly denied the motion to dismiss the case for improper venue under 28 U.S.C. § 1406(a) because respondent apparently does business [there]."). Defendant itself raised transfer under 1404(a),

conceding that venue is proper here.

Thus, the venue here is proper but the parties are subject to an enforceable forum selection clause, which, as discussed below, is not unreasonable and specifies a federal forum. See Salovaara, 246 F.3d at 298-99.  This court therefore concludes that the appropriate analysis is whether the case should be transferred under § 1404(a).  See id.


### 2.      Section 1404(a) Factors

Section 1404(a) controls the inquiry of whether to give effect to a forum selection clause and to transfer a case.  Stewart, 487 U.S. at 29, 32.  Section 1404(a) provides that "a district court may transfer any civil action to any other district or division where it might have been brought" for "the convenience of parties and witnesses" and "in the interest of justice."  28 U.S.C. § 1404(a); see Stewart, 487 U.S. at 29.  Courts must adjudicate motions to transfer based on an "individualized, case-by-case consideration of convenience and fairness," weighing a number of factors.  Id. (quoting Van Dusen v. Barrack, 376 U.S. 612, 622 (1964)).  A court's review is not limited to the three enumerated factors in § 1404(a) – convenience of the parties, convenience of witnesses, or interests of justice – and courts may consider various private and public interests. Jumara, 55 F.3d at 879-80.

The parties' agreement as to the proper forum, although not dispositive, receives "substantial consideration" in the weighing of relevant factors. Id. at 880; see Stewart, 487 U.S. at 29-30 ("The presence of a forum selection clause . . . will be a significant factor that figures centrally in the district court's calculus.  . . . The flexible and individualized analysis Congress prescribed in § 1404(a) thus encompasses consideration of the parties' private expression of their

venue preferences.").  The deference generally given to a plaintiff's choice of forum is

"inappropriate where the plaintiff has already freely chosen an appropriate venue."  Jumara, 55

F.3d at 880.  Although the moving party carries the burden to show the need for a transfer, if "the

forum selection clause is valid, which requires that there have been no 'fraud, influence, or

overweening bargaining power,' the plaintiffs bear the burden of demonstrating why they should

not be bound by their contractual choice of forum."  Id. at 879-80 (quoting M/S Bremen v.

Zapata Off-Shore Co., 407 U.S. 1, 12-13 (1972)).

Having determined that § 1404(a) controls, the court now examines whether the language

of the forum selection clause is permissive or mandatory in order to ascertain what weight to give

it.  Next, the court examines the validity or reasonableness of the forum selection clause through

application of the test in M/S Bremen v. Zapata Off-Shore Co., 407 U.S. at 12-13, and

determines whether Plaintiff has met his burden of demonstrating why he should not be bound by

the forum selection clause.  Finally, the court weighs the private and public factors under §

1404(a).


### a.        The Language of the Forum Selection Clause is Mandatory.

Plaintiff argues that even if the forum selection clause is valid, this court still retains

jurisdiction because the forum selection clause contains language that is permissive, not

mandatory.  Where a forum selection clause is permissive, the parties are not exclusively limited

to litigating their disputes in only one forum and courts accord the clause less weight.  See Hunt

Wesson Foods, Inc. v. Supreme Oil Company, 817 F.2d 75, 77 (9th Cir. 1987); E'Cal Corp. v.

Office Max Inc., No. 01-3281, 2001 U.S. Dist. LEXIS 15868, at *6, 2001 WL 1167534, at *2

(E.D. Pa. Sept. 10, 2001).  The forum selection clause does not have to contain language such as "exclusive" or "sole" to be mandatory.  Wall Street Aubrey Golf, LLC v. Aubrey, 189 Fed. Appx. 82, 85-86 (3d Cir. 2006) (upholding a forum selection clause, which stated "[t]his Lease shall be construed in accordance with the laws of the Commonwealth of Pennsylvania, with venue laid in Butler County, Pennsylvania," and finding it unambiguous "[d]espite the provision's failure to use words like 'exclusive' or 'sole' with respect to venue").

The forum selection clause states, "[t]he Agreement must be . . . adjudicated in Santa Clara County, California."  By its plain language, the forum selection clause unambiguously provides that disputes must be brought in Santa Clara County.  Cf. Person v. Google, Inc., 456 F. Supp. 2d 488, 493-94 (S.D.N.Y. 2006) (finding similar language to be mandatory where the forum selection clause provided that "[any] dispute or claim arising out of or in connection with this Agreement shall be adjudicated in Santa Clara County, California").  "This mandatory language makes clear that venue, the place of suit, lies exclusively in the designated county.  Thus, whether or not several states might otherwise have jurisdiction over actions stemming from the agreement, all actions must be filed and prosecuted in [the designated county]."  Docksider, Ltd. v. Sea Tech., Ltd., 875 F.2d 762, 764 (9th Cir. 1989) (construing a forum selection clause's language that "venue of any action brought hereunder shall be deemed to be in Gloucester County, Virginia" to be mandatory).  The court finds that the forum selection clause's clear and explicit language in this case is mandatory and enforceable.

**b.      The Forum Selection Clause is Valid and Reasonable.**

"Where the forum selection clause is valid, which requires that there have been no 'fraud,

influence, or overweening bargaining power,' the plaintiffs bear the burden of demonstrating why they should not be bound by their contractual choice of forum."  Jumara, 55 F.3d at 880 (quoting Bremen, 407 U.S. at 12-13).  The objecting party must show that (1) the forum selection clause is the result of fraud or overreaching, (2) its enforcement would violate a strong public policy of the forum, or (3) its enforcement would result in litigation so seriously inconvenient and unreasonable that it would deprive a litigant of his or her day in court.  Bremen, 407 U.S. at 15-17; In re Diaz Contracting, Inc., 817 F.2d 1047, 1051-52 (3d Cir. 1987).

### *i.      No Fraud or Overreaching.*

Plaintiff presents arguments that the AdWords Agreement was an adhesion contract and that the Agreement and its forum selection clause are unconscionable.  The court has already rejected these arguments and does not find any evidence of fraud, coercion, or overreaching in this case with respect to the contract as a whole and the forum selection clause in particular.  A non-negotiated forum selection clause in a form contract may be enforceable even if it is not the subject of bargaining.  Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 593-94 (1991).

Although forum selection clauses are subject to judicial scrutiny for fundamental fairness, there is no evidence of bad faith by the Defendant.  See id. at 595.  There is no indication that Defendant included the forum selection clause "as a means of discouraging [customers] from pursuing legitimate claims," especially where Defendant has its principal place of business in Santa Clara and has a legitimate interest in protecting itself from suit in all fifty states.  See id. Furthermore, Plaintiff had notice of the forum selection clause and retained the option of rejecting the contract with impunity.  See id.

### ii.   *No Violation of a Strong Public Policy of the Forum.*

The forum selection clause at issue does not violate a strong public policy of this forum. Indeed, it would be consistent with the public policy of this forum to enforce the forum selection clause in order to give force to the parties' agreement.  See Jumara, 55 F.3d at 880 (holding that valid forum selection clauses are entitled to substantial consideration).  In addition, a California forum would be more appropriate because California law applies to disputes under the Agreement.

### iii.   *Enforcement Will Not Deprive Plaintiff of his Day in Court.*

Plaintiff argues that litigating this dispute in California would be prohibitively difficult, so as to deprive him of his day in court, because his heart condition requires that he restrict his travel (Pl. Mot. for Summ. J., Ex. A) and because the cost of hiring a lawyer in California would be prohibitively expensive.  "Mere inconvenience or additional expense is not the test of unreasonableness since it may be assumed that the plaintiff received under the contract consideration for these things.  If the agreed upon forum is available to plaintiff and said forum can do substantial justice to the cause of action then plaintiff should be bound by his agreement." Cent. Contracting Co. v. Maryland Casualty Co., 367 F.2d 341, 344 (3d Cir. 1966) (quoting Cent. Contracting Co. v. C. E. Youngdahl & Co., Inc., 418 Pa. 122, 133-34 (1965)).

Plaintiff's arguments regarding additional expense are not sufficient to show he would be deprived of his day in court.  Furthermore, Plaintiff or any of the attorneys he employs in his law firm, such as those who have appeared on his behalf in this matter, may apply for admission pro hac vice to represent Plaintiff in any litigation in California, thus relieving Plaintiff of hiring a

lawyer in California.  Although the court is sympathetic to Plaintiff's health concerns, the restriction on his travel does not have the effect of depriving him of his day in court.  As Defendant has proposed, accommodations can be made, such as arranging for his continued representation by attorneys in his firm in California court, possible telephonic or video appearances, and, where possible, the scheduling of depositions to occur near Plaintiff's home.

California is not a "remote alien forum."  See Carnival Cruise Lines, 499 U.S. at 594 (quoting Bremen, 407 U.S. at 17).  Nor is this dispute an inherently local one more suited to resolution in Pennsylvania than in California.  See id.  Although Plaintiff argues that its witnesses and key documents are located in this judicial district, the alleged wrongful acts, including the failure to prevent or investigate click-fraud and the overcharging for fraudulent clicks, occurred in substantial part in California, where Defendant is headquartered.  Thus, relevant documents and witnesses are located in California.  Finally, this dispute is better suited for resolution in a California court because California law governs this dispute and the amended complaint includes a count under California law.

Transfer to the appropriate venue ensures that Plaintiff will have his day in court.  There is no evidence that litigation in California would prevent Plaintiff from bringing any of his claims.  Enforcement of the forum selection clause therefore will not result in litigation so seriously inconvenient and unreasonable so as to deprive Plaintiff of his day in court.  Because the forum selection clause is valid, Plaintiff must demonstrate why he should not be bound by it. See Jumara, 55 F.3d at 880.

c.      **Private Factors under § 1404(a)**

The court accordingly turns to the private factors under § 1404(a).  The private interests a court may consider in a § 1404(a) analysis include: "plaintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses – but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)."  Jumara, 55 F.3d at 879 (citations omitted).

Because the forum selection clause is valid and reasonable, the choice of forum of Santa Clara County in the AdWords Agreement is accorded substantial consideration and Plaintiff's choice of forum is not given deference.  Again, although Plaintiff argues that his witnesses and key documents are located in this judicial district, any documents or witnesses needed to prove the heart of Plaintiff's claims – that Google had the capacity to determine which clicks are fraudulent, did nothing to prevent click fraud, charged Plaintiff for fraudulent clicks, and failed to investigate Plaintiff's complaints regarding click fraud – may be found in California, where Google is headquartered and where a significant part of the alleged wrongs occurred.  For the reasons discussed previously, Plaintiff's health condition and expense concerns do not outweigh factors militating in favor of transfer.  The private factors thus weigh in favor of transfer.

d.      **Public Factors under § 1404(a)**

The public interests a court may consider in a § 1404(a) analysis include: "the

33

enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases." Jumara, 55 F.3d at 879-80 (citations omitted).

The public factors under § 1404(a) also weigh in favor of transfer to Santa Clara County, California. As previously stated, this dispute is better suited for resolution in a California court because California law governs this dispute and the amended complaint includes a count under California law. Additionally, California courts have expertise in commercial litigation involving web-based technology. This dispute is not inherently local, and the public policy of this forum would support enforcement of the valid forum selection clause.

Plaintiff has not met his burden as to why he should not be bound by the valid forum selection clause. See id., 55 F.3d at 880. After according the parties' original choice of forum, as expressed in the forum selection clause, substantial weight, and balancing the convenience of the parties, the convenience of the witnesses, and the interests of justice, the court finds that this matter should be transferred to the Northern District of California, San Jose Division.

**D.     Unjust Enrichment Claim**

Defendant argues, in the alternative, that Plaintiff's unjust enrichment claim should be dismissed. As this matter was not brought in the proper forum and is being transferred, this court does not have jurisdiction to decide this issue.

34

## V.  Conclusion

For the foregoing reasons, Defendant's motion to transfer is granted and Plaintiff's motion for summary judgment is denied.  An appropriate Order follows.